DA 09-0202

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 339N

IN THE MATTER OF B.P. and B.P.,

Youths in Need of Care.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause Nos. DN-07-04; DN-07-05
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Elizabeth Thomas, Attorney at Law, Missoula, Montana

For Appellee:

Hon. Steve Bullock, Montana Attorney General; Tammy Plubell,
Assistant Attorney General, Helena, Montana; Helena, Montana

Submitted on Briefs:  September 16, 2009

Decided:  October 15, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Birth father M.P. appeals from an order of the Twenty-First Judicial District Court, Ravalli County, terminating parental rights to his children, B.P. and B.P. We affirm.

¶3 M.P. raises the following issues on appeal:

¶4 Whether the District Court abused its discretion when it denied M.P.'s motion to continue the termination hearing.

¶5 Whether the District Court erred in terminating M.P.'s parental rights to his children B.P. and B.P.

¶6 M.P. and B.R. are the birth parents of B.P. (age 12) and B.P. (age 11). In 2006, B.R. moved from Illinois, where M.P. still resided, to Montana with her boyfriend D.S. B.R. and D.S. had a volatile relationship resulting in repeated referrals to the Department of Public Health and Human Services (DPHHS) concerning domestic violence in the home. On March 31, 2007, law enforcement officers responded to a report of domestic violence at B.R.'s home and arrested D.S. for assaulting B.R. in the presence of the

2

children.  When B.R. resumed contact with D.S. and developed a plan to flee with him and the children, DPHHS placed the children in foster care and filed a petition for emergency placement and temporary legal custody.

¶7    M.P. signed a written stipulation that B.P. and B.P. were youths in need of care on July 21, 2007.  DPHHS developed a treatment plan for M.P., which he signed.  The court adjudicated B.P. and B.P. as youths in need of care on August 1, 2007, and granted DPHHS temporary legal custody of the children.  The court approved M.P.'s treatment plan on September 12, 2007.  DPHHS requested and received an extension of temporary legal custody after six months, because neither parent had successfully completed their treatment plan.  At that time, M.P. had completed a chemical dependency evaluation, but DPHHS had not received a copy, despite repeated requests from M.P.'s assigned social worker, Rhonda Harris (Harris).  Further, M.P. had not complied with random urinalysis testing and had failed to keep in contact with Harris.  M.P. had not completed a psychological evaluation or an age-appropriate parenting class, and his telephone visitation with his children had been sporadic.  Significantly, M.P. had made no arrangements to visit his children in person and had not contacted Harris to inquire about his children's welfare.

¶8    On September 25, 2008, a year after the treatment plan was adopted, DPHHS filed a petition to terminate parental rights.  The court originally scheduled the termination hearing for January 8, 2009.  On January 7, 2009, M.P.'s counsel filed a motion to continue the hearing because M.P. had not been personally served and because M.P. was incarcerated in Illinois until March 7, 2009.  The District Court granted M.P.'s request to

3

continue the hearing, resetting the hearing for February 20, 2009. At the beginning of the hearing on February 20, 2009, M.P.'s counsel orally moved to continue the hearing, citing M.P.'s due process right to be able to participate in the hearing. DPHHS objected to the last-minute continuance because the State of Illinois Department of Corrections website projected M.P.'s parole date as September 5, 2009. The children's attorney objected to the continuance based upon the needs of the children. The District Court established that M.P. and his counsel still had regular communication about the case despite M.P.'s incarceration, and concluded that M.P.'s counsel should be able "to effectively cross-examine and present [M.P.'s] point of view even though he's not physically present here." The court denied the oral motion to postpone the hearing.

¶9 At the termination hearing, Harris testified about her repeated efforts to provide assistance to M.P. and his continuous lack of cooperation. Amber Francis (Francis) testified at the termination hearing regarding her interstate compact home study of M.P.'s Illinois residence to determine if he was an appropriate placement option for the children. Francis interviewed M.P. on April 15, 2008. M.P. stated that he had been arrested once for failure to pay child support and that he did not drink alcohol. Francis attempted unsuccessfully to follow up with M.P., who did not return her calls. Francis determined through a records check that M.P. had prior convictions for assault and invasion of privacy, and that M.P. was arrested on May 6, 2008, for driving under the influence (DUI). In light of M.P.'s dishonesty about his past criminal record and his use of alcohol, Francis did not approve M.P. as an appropriate placement option for the children.

4

¶10 Anna Marie White (White) testified as a family support worker that supervised telephone conversations between M.P. and the children. White testified that it took some effort to even make initial contact with M.P. and that she believed that M.P. was not always truthful with her or DPHHS. White recounted how M.P. communicated inappropriate information to the children, needed to be redirected during phone conversations, failed to act on her constructive suggestions, and did not demonstrate any interest in learning better parenting skills. Julie Telfer (Telfer), the children's therapist, testified similarly regarding a supervised visit between M.P. and the children when he came to Montana on one occasion during the youth in need of care proceeding.

¶11 The District Court terminated M.P.'s parental rights to B.P. and B.P. on March 4, 2009, following the hearing.

¶12 *Whether the District Court abused its discretion when it denied M.P.'s motion to continue the termination hearing.*

¶13 The decision to grant a continuance is within the discretion of the district court. Section 25-4-503, MCA. A district court's decision on whether to grant a continuance in an abuse and neglect action is a matter of discretion. The court should consider whether the movant has shown good cause and whether the continuance would be in the furtherance of justice. *In re H.E.*, 2002 MT 257, ¶ 25, 312 Mont. 182, 59 P.3d 29.

¶14 Montana law provides that when children have been in foster care for 15 months of the last 22 months, the children's best interests are presumed to be served by termination of parental rights. Section 41-3-604(1), MCA. This Court has concluded that a district court did not abuse its discretion when it denied a mother's motion to

5

continue a termination hearing, made on the day of the hearing, because granting such a continuance would not have been in the furtherance of justice. *In re H.E.*, ¶¶ 29-30. B.P. and B.P. had spent nearly 19 months in foster care at the time of the termination hearing. Their therapist, Telfer, testified at the hearing that further delay would be harmful. The District Court granted M.P.'s initial request for a continuation of the January 8, 2009, hearing and rescheduled the hearing for about six weeks later. Yet M.P. never filed a second motion to continue, nor did he alert the court of any problem until the actual day of the hearing. The only reason M.P. gave for again postponing the hearing was that it would be difficult, if not impossible, for him to attend the hearing since he was incarcerated in Illinois. M.P. never disclosed what efforts, if any, he had made to try to attend the hearing or to participate from Illinois via remote access technology. The District Court did not abuse its discretion when it denied M.P.'s untimely motion to continue the termination hearing.

¶15 *Whether the District Court erred in terminating M.P.'s parental rights to his children B.P. and B.P.*

¶16 This Court reviews a district court's decision to terminate parental rights for abuse of discretion. *In re D.B. and D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. We review findings of fact to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct. *In re D.B.*, ¶ 18.

¶17 Montana law provides that a court may terminate a parent's rights upon clear and convincing evidence that (1) the child has been adjudicated a youth in need of care, (2) an appropriate court-approved treatment plan has not been complied with or has not been

6

successful, and (3) the conduct or condition rendering the parents unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. M.P. signed a written stipulation that B.P. and B.P. were youths in need of care on July 21, 2007, which the court accepted when it adjudicated B.P. and B.P. as youths in need of care on August 1, 2007. The court approved an appropriate treatment plan for M.P. on September 12, 2007. The District Court made specific findings that an appropriate treatment plan was not successful in its March 4, 2009, findings of fact, conclusions of law, and order terminating parental rights. Finally, the District Court concluded that M.P.'s conduct was unlikely to change within a reasonable time, as evidenced by ongoing legal problems stemming from his alcohol use and his inability to appropriately parent his children. Thus, the District Court did not abuse its discretion in terminating M.P.'s parental rights pursuant to § 41-3-609(1)(f), MCA.

¶18    M.P. argues that the District Court erroneously terminated his parental rights, because the State failed to make reasonable efforts to reunify M.P. with his children, as required by § 41-3-423, MCA, and because the court's findings of fact regarding M.P.'s compliance with his treatment plan were not sufficiently supported by the record.

¶19    Section 41-3-423(1), MCA, requires DPHHS to make reasonable efforts "to reunify families that have been separated by the state." The statute lists some reasonable efforts, such as the development of a written plan specifying state efforts to reunify families and the provision of services pursuant to the plan, as well as periodic reviews to ensure timely progress. Section 41-3-423(1), MCA. The statute emphasizes that the

7

child's health and safety are of paramount concern in this process. Section 41-3-423(1), MCA.

¶20 DPHHS made reasonable efforts to reunite M.P. with his children. DPHHS developed an appropriate treatment plan for M.P., which M.P. signed and agreed to complete. DPHHS also arranged and paid for services M.P. needed to complete under the plan or provided necessary information regarding such services, and attempted to facilitate contact between M.P. and the children.

¶21 M.P.'s own efforts at reunification were limited at best. DPHHS provided him with the opportunity to have regular telephone visits with his children through White. However, M.P. only availed himself of this opportunity sporadically, and seemingly ignored White's constructive suggestions for improving the quality of contact between M.P. and his children. According to White, M.P. showed no interest in using her as a resource to better his parenting skills. Similarly, DPHHS engaged Telfer to provide psychotherapy for the children. Telfer supervised one visit between M.P. and the children, at which M.P. did not act appropriately as a parent. M.P. did not contact Telfer again to check on his children's progress. All of these varied actions demonstrate that DPHHS made reasonable efforts to reunite M.P. with B.P. and B.P., however M.P. failed to adequately complete his obligations under the treatment plan.

¶22 The District Court's findings of fact regarding M.P.'s compliance with his treatment plan and grounds for termination are sufficiently supported by the record. The District Court heard testimony from Harris, regarding her efforts to facilitate completion of the treatment plan; Francis, regarding the home study process in Illinois; White,

8

regarding her unsuccessful effort to establish regular, healthy contact between M.P. and his children; and Telfer, regarding the children's emotional state and immediate needs, as well as her contact with M.P. during the one visit she supervised between M.P. and the children. Moreover, M.P. was serving time in Illinois for aggravated DUI and did not openly and honestly complete his chemical dependency evaluation. M.P. failed to follow through with urinalysis testing and failed to complete a psychological evaluation even though Harris had given him sufficient opportunities to do so. M.P. failed to keep Harris informed of his whereabouts and even lied to her by reporting that he was in truck driving school when he was actually in jail. The District Court's findings were not clearly erroneous and its conclusions of law were correct.

¶23 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that the appeal is without merit because the issues are ones of judicial discretion and there clearly was not an abuse of discretion.

¶24 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE