333 Conn. 297     OCTOBER, 2019     297

In re Taijha H.-B.

# IN RE TAIJHA H.-B.*
## (SC 20151)

Palmer, McDonald, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to the United States Supreme Court's decision in *Anders* v. *California* (386 U.S. 738), appointed appellate counsel for an indigent defendant who concludes that the grounds for the defendant's appeal are wholly frivolous and wishes to withdraw from representation must, prior to withdrawal, provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional, relevant points. Thereafter, the court must conduct an independent review of the entire record and may allow counsel to withdraw if it agrees with counsel's conclusion that the defendant's appeal is entirely without merit.

The respondent mother, who is indigent and whose parental rights with respect to her child, T, had been terminated, appealed from the Appellate Court's dismissal of her appeal from, inter alia, the trial court's granting of her appointed counsel's motion to withdraw from representing her on appeal in light of his conclusion that such an appeal would be frivolous. After the trial court rendered judgment terminating the respondent's parental rights, counsel was appointed to review the respondent's case for potential grounds for appeal. The court reporter was unable to provide counsel with a complete set of transcripts, and, thus, counsel was unable to fully review the case file for potential appealable issues, prior to the deadline for filing an appeal. Nevertheless, counsel proceeded to file a timely appeal from the judgment terminating her parental rights. After receiving the remaining transcripts, counsel completed his review of the case and advised the respondent that he would be unable to represent her on appeal because there were no appealable issues that were not frivolous. Counsel then filed motions in the trial court and the Appellate Court seeking to withdraw. The Appellate Court denied counsel's motion without prejudice pending resolution of the matter in the trial court. After multiple hearings, the trial court granted counsel's motion to withdraw without requiring him to file an *Anders* brief or conducting an independent review of the record to determine whether the respondent's appeal would be frivolous. Subsequently, counsel amended the respondent's appeal to include the issue of whether the trial court should have allowed him to withdraw without utilizing the

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

In re Taijha H.-B.

*Anders* procedure. The Appellate Court thereafter dismissed the respondent's amended appeal on the ground that the *Anders* procedure is not applicable to the withdrawal of an appellate attorney in child protection proceedings and also on the ground that the appeal was not properly filed due to a failure to comply with the rule of practice (§ 79a-3 [c]) establishing the procedure by which an indigent party who wishes to appeal from the termination of his or her parental rights but whose appointed trial counsel declines to pursue the appeal may obtain review by the Division of Public Defender Services. On the granting of certification, the respondent appealed to this court from the Appellate Court's dismissal of her amended appeal. *Held*:

1. The Appellate Court improperly dismissed the respondent's appeal for failure to comply with Practice Book § 79a-3 (c) insofar as counsel filed the respondent's original appeal before he fully reviewed the merits of that appeal; as § 79a-3 (c) does not purport to authorize the taking of an appeal by an indigent party but, rather, merely dictates the procedure by which an appointed appellate review attorney is to engage and assist in that process, this court did not read § 79a-3 (c) to mandate the dismissal of the respondent's appeal when, under the unusual circumstances of the case, the respondent's counsel, through no fault of his own, was unable to fully review the case prior to the deadline for filing the appeal and prudently opted to file the appeal prior to making a final merits determination in order to preserve the respondent's rights.

2. The respondent could not prevail on her claim that Practice Book § 79a-3 violates the equal protection clause of the fourteenth amendment to the United States constitution on the ground that the rule imposes a higher legal burden on appeals brought by indigent litigants who have been assigned counsel than on litigants who have the financial means to hire private counsel: although the Rules of Professional Conduct (3.1) generally prohibit an attorney from taking an appeal that is frivolous whereas the rules of practice (§§ 35a-21 [b] and 79a-3) governing appeals in child protection matters by indigent parents permit assigned counsel to appeal if counsel determines there is merit to an appeal, the concepts of nonfrivolous appeals and potentially meritorious appeals are deemed to be synonymous for purposes of § 79a-3, as reviewing counsel for an indigent parent and a parent who is not indigent must apply the same standards in determining whether there is no merit to an appeal as in determining whether the appeal would be frivolous; accordingly, § 79a-3 does not impose a higher standard on indigent parents seeking to appeal from a termination of their parental rights, and, therefore, the rules do not treat indigent and nonindigent parents differently.

3. The respondent had a right under the due process clause of the fourteenth amendment to the assistance of counsel in connection with her appeal from the termination of her parental rights: pursuant to the United States Supreme Court's decision in *Lassiter* v. *Dept. of Social Services* (452 U.S. 18), whether the due process clause of the fourteenth amendment requires the appointment of counsel for an indigent parent whenever a

In re Taijha H.-B.

state seeks to terminate his or her parental rights is a fact specific determination that must be made on a case-by-case basis, and this court determined, on the basis of the United States Supreme Court's decision in *M.L.B.* v. *S.L.J. ex rel. S.L.J.* (512 U.S. 102), that this right to appointed counsel, if it is found to apply in termination proceedings, also applies to appeals from termination decisions; moreover, in determining whether the right to counsel is required under *Lassiter*, a court is to consider various factors, including whether the indigent parent faces potential criminal liability as a result of evidence presented in the proceedings, whether expert testimony will be presented, whether the case will involve complex points of substantive or procedural law, whether the parent has shown a willingness to participate in the proceedings, in contesting termination, and in strengthening his or her relationship with the child, and whether the parent might reasonably prevail with the assistance of counsel; furthermore, consideration of those factors led this court to find a right to appointed counsel in the present case, as the respondent had a long history of criminal activity and was facing new charges at the time of the termination proceedings, and evidence presented during those proceedings could have influenced her prosecution or implicated the respondent in various other crimes, the respondent's termination proceedings involved testimony by multiple experts, and the court relied heavily on that testimony in reaching its conclusions that the respondent was incapable of caring for T and was unable or unwilling to benefit from reunification efforts, the respondent previously had been adjudicated incompetent and had serious, unresolved mental health issues that would have made it difficult, if not impossible, for her to devise and execute a viable appellate strategy if she had been required to represent herself, and there was abundant evidence that the respondent had demonstrated a commitment to reestablishing custody and maintaining a parental relationship with T, and to actively asserting her legal rights.

4. The respondent having had a constitutional right to appointed appellate counsel, due process did not permit her counsel to withdraw for lack of a nonfrivolous issue on which to proceed without demonstrating, either in the form of an *Anders* brief or in the context of a hearing, that the record had been thoroughly reviewed for potentially meritorious issues, and without taking sufficient steps to facilitate review of the case by the respondent and the presiding court for the purpose of a determination of whether counsel accurately concluded that any appeal would be meritless: this court based its determination that some *Anders*-type procedure was required in the present case on the fact that the majority of courts that have addressed this issue have imposed such a requirement as a matter of federal or state constitutional law, the fact that most of the same rationales that require the use of the *Anders* procedure in the criminal context apply with equal force to termination proceedings, and the fact that the benefits of obtaining a second opinion in the form of some limited judicial review of counsel's no merit determi-

In re Taijha H.-B.

nation more than offset the potential costs, and, in light of the circumstances of the case, fundamental fairness required that the respondent be afforded some minimal procedural protections before the court accepted counsel's representation that any appeal would be frivolous and potentially required the respondent to proceed on a self-represented basis; moreover, in termination cases in which there is a right to some *Anders*-type procedure, and subject to the discretion of the presiding court, that court must conduct a colloquy sufficient to ascertain that appointed counsel has evaluated all potential grounds for appeal and has brought the most promising grounds to the court's attention, the indigent parent must be afforded an opportunity to review counsel's conclusion and to bring to the court's attention what he or she believes are any appealable issues, and the court must reach its independent conclusion that any appeal would be frivolous; furthermore, a review of the record in the present case led this court to conclude that the trial court had failed to observe adequate procedural safeguards before permitting the respondent's counsel to withdraw, as the record did not indicate that the trial court was sufficiently apprised of the facts and legal issues involved in the case so as to enable it to perform an independent review, that the court did in fact form its independent judgment that the respondent's counsel had accurately determined that any appeal would be meritless, or that counsel adequately communicated to the respondent her procedural options in the event that counsel was allowed to withdraw; accordingly, the Appellate Court improperly dismissed the respondent's amended appeal on the ground that *Anders* was inapplicable to the withdrawal of an appellate attorney in child protection proceedings, and the case was remanded in order to allow the trial court, at a minimum, to conduct a hearing to verify, on the record, that the respondent had been advised as to any potential grounds for appeal and had the opportunity to question counsel, to be satisfied that counsel has fully explored potential grounds for appeal, and to independently determine that any appeal by the respondent would be frivolous.

(*Two justices concurring in part and dissenting
in part in one opinion*)

Argued January 22—officially released September 27, 2019**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights as to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Marcus, J.*; judgment terminating the respondents' parental rights, from which the respon-

** September 27, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

In re Taijha H.-B.

dent mother appealed to the Appellate Court; thereafter, the court, *Burke, J.*, granted the motion to withdraw filed by the respondent mother's counsel; subsequently, the respondent mother amended her appeal, and the Appellate Court dismissed the amended appeal; thereafter, the respondent mother, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*James P. Sexton*, assigned counsel, with whom were *Megan L. Wade*, assigned counsel, and, on the brief, *Emily Graner Sexton*, assigned counsel, for the appellant (respondent mother).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, former attorney general, *Benjamin Zivyon* and *Jessica Gauvin*, assistant attorneys general, and *Hannah Kalichman*, certified legal intern, for the appellee (petitioner).

*Joshua Michtom*, assistant public defender, *Jay Sicklick* and *Dan Barrett* filed a brief for the Office of the Chief Public Defender et al. as amici curiae.

*Chris Oakley*, *Bet Gailor*, *Ellen Morgan*, *Douglas Monaghan*, *Katherine Dornelas* and *Benjamin Wattenmaker* filed a brief for the Child Welfare and Juvenile Law Section of the Connecticut Bar Association as amicus curiae.

*Opinion*

PALMER, J. Under Practice Book § 79a-3,[1] in a case involving the termination of parental rights in which the attorney appointed to represent an indigent party

---

[1] Practice Book § 79a-3 (b) provides in relevant part: "If a trial attorney who has provided representation to an indigent party through the Division of Public Defender Services declines to pursue an appeal and the indigent party expressly wishes to appeal, the trial attorney shall within twenty days of the decision or judgment simultaneously file with the court before which the matter was heard a motion for an additional twenty day extension of time to appeal, a sworn application signed by the indigent party for appointment of an appellate review attorney and a waiver of fees, costs and expenses,

302 OCTOBER, 2019 333 Conn. 297

In re Taijha H.-B.

in the trial court declines to pursue an appeal, that party may seek the appointment of an appellate review attorney who, after reviewing the case and determining that there is a legitimate basis for an appeal, is required to represent the party on appeal. The principal issue presented by this certified appeal is whether an appellate review attorney appointed to represent an indigent parent in an appeal from the termination of his or her parental rights must follow the procedure set forth in *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), before being permitted to withdraw from representation on the ground that he or she is unable to identify any nonfrivolous basis for appeal.[2] We hold that when, as in the present case, the circumstances are such that the indigent parent has a constitutional right to appellate counsel, counsel may not be

including the cost of an expedited transcript, and shall immediately request an expedited transcript from the court reporter in accordance with Section 79a-5, the cost of which shall be paid for by the Division of Public Defender Services. . . .''

Practice Book § 79a-3 (c) (1) provides: ''If the appellate review attorney determines that there is merit to an appeal, that attorney shall file the appeal in accordance with Section 63-3.''

Practice Book § 79a-3 (c) (2) provides: ''If the reviewing attorney determines that there is no merit to an appeal, that attorney shall make this decision known to the judicial authority, to the party and to the Division of Public Defender Services at the earliest possible moment. The reviewing attorney shall inform the party, by letter, of the balance of the time remaining to appeal as a self-represented party or to secure counsel who may file an appearance to represent the party on appeal at the party's own expense. A copy of the letter shall be sent to the clerk for juvenile matters forthwith.''

[2] ''In *Anders*, the United States Supreme Court outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indigent defendant's case is wholly frivolous and wishes to withdraw from representation. . . . Under *Anders*, before appointed counsel may withdraw, he or she must provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional relevant points. . . . Thereafter, the court, having conducted its own independent review of the entire record of the case, may allow counsel to withdraw if it agrees with counsel's conclusion that the appeal is entirely without merit.'' (Citations omitted.) *State* v. *Francis*, 322 Conn. 247, 250 n.3, 140 A.3d 927 (2016).

In re Taijha H.-B.

permitted to withdraw without, first, demonstrating, whether in the form of an *Anders* brief or in the context of a hearing, that the record has been thoroughly reviewed for potential meritorious issues, and, second, taking steps sufficient to facilitate review of the case, by the indigent parent and the presiding court, for the purpose of a determination as to whether the attorney accurately concluded that any appeal would be meritless.

In 2015, the petitioner, the Commissioner of Children and Families, filed a petition to terminate the parental rights of the natural parents of then six year old Taijha H.-B.: her mother, Sonya B., the respondent, and her father, Harold H.[3] After the trial court granted the petition and rendered judgment thereon, the Office of the Chief Public Defender appointed counsel for the respondent, who is indigent, to review the matter for a possible appeal as required by Practice Book § 79a-3 (c). Counsel filed a timely appeal but subsequently filed motions in both the trial court and the Appellate Court to withdraw his appearance for want of a nonfrivolous issue on which to proceed. The trial court granted counsel's motion to withdraw, accepting counsel's representation that the appeal was without merit. Counsel subsequently amended the respondent's appeal, adding a claim that the trial court should not have permitted him to withdraw without first requiring him to comply with *Anders*. The Appellate Court, acting on its own motion, dismissed the amended appeal on the following two independent grounds: (1) the amended appeal was not properly filed pursuant to § 79a-3 (c), which, in the view of that court, does not permit an appellate review attorney to file an appeal without first having determined that there is merit to the appeal; and (2) the briefing procedure set forth in *Anders* is not applicable

---

[3] Harold H. has not contested the judgment terminating his parental rights and is not a party to the present appeal. We hereinafter refer to Sonya B. as the respondent and to Harold H. by name.

In re Taijha H.-B.

to the withdrawal of an appellate review attorney in a child protection proceeding. We granted certification to appeal with respect to both issues. *In re Taijha H.- B.*, 329 Conn. 914, 187 A.3d 423 (2018). Because we agree with the respondent that, under the circumstances of this case, her amended appeal was not improperly filed and also that the appellate review attorney should not have been permitted to withdraw without first assisting the trial court in conducting a review of the case, we reverse the judgment of the Appellate Court. We reject, however, the respondent's additional claim that § 79a- 3 (c), on its face, violates the equal protection clause of the fourteenth amendment to the United States constitution.

I

The record reveals the following relevant facts, as found by the trial court or that are undisputed, and procedural history. The child at the center of this dispute, Taijha, was born to the respondent and Harold H. in November, 2008. The Department of Children and Families was involved with Taijha from the outset due to the respondent's admitted use of illegal substances during pregnancy.

In 2014, the commissioner filed a neglect petition and requested an order of temporary custody, both of which were granted. The trial court subsequently approved permanency plans of termination of the respondent's and Harold H.'s parental rights, and adoption. In October, 2015, the commissioner filed a petition for termination of parental rights.

In 2017, following a trial that included medical testimony by two expert witnesses, the court, *Marcus, J.*, granted the petition, terminating the parental rights of the respondent and Harold H. Among other things, the court found, by clear and convincing evidence, that the respondent had an extensive mental health history with a diagnosis of psychotic disorder; a history of selling

In re Taijha H.-B.

and abusing illicit substances, primarily marijuana and phencyclidine (PCP); a significant criminal history, including multiple arrests and incarcerations during Taijha's life; a history of hostile and violent conduct toward both Taijha and others; and an inability to focus on, prioritize, and meet Taijha's emotional needs. At the time of trial, the respondent was again incarcerated, this time for charges involving an alleged armed robbery.

The court further found that the respondent had failed to follow through in obtaining numerous services recommended or facilitated by the department. These include services relating to domestic violence prevention, substance abuse testing and treatment, parenting skills, and mental health assessment and treatment. As a result of this history and other issues involving Harold H., including incidents of domestic violence between the respondent and Harold H. in Taijha's presence, there had been seven neglect substantiations involving Taijha, and Taijha was removed from her mother's care and placed with relative and nonrelative foster parents at various times. On two occasions, the respondent abducted Taijha during periods when she did not have custody of her.

Ultimately, the court concluded, consistent with the expert medical testimony, that the respondent was unable or unwilling to benefit from the various efforts the department had made to reunify her with Taijha and that she had failed to rehabilitate. These findings largely reflected the respondent's frequent incarceration, her lack of stable housing and employment, and, above all, the serious, deteriorating mental health problems that she refused to address. The court also found that, although Taijha has an emotional bond with the respondent, their relationship and the attendant instability had a negative impact on Taijha, on balance, and that Taijha, who was eight years old at that time, expressed a preference to live with her foster parents,

In re Taijha H.-B.

whom she identified as her family and who, the court further found, provide a "safe, secure and reliable" home.

The following additional procedural history, which transpired after the trial court terminated the parental rights of the respondent and Harold H., is the primary subject of the present appeal. The court granted the petition to terminate the parental rights of the respondent and Harold H. on September 25, 2017. On October 13, 2017, the Office of the Chief Public Defender appointed Attorney James Sexton to review the case for potential grounds for appeal. After Sexton sought and was granted the single extension of time that is permitted under the rules of practice; see Practice Book § 79a-2; the final deadline for the respondent to appeal from the judgment of termination would have been November 6, 2017.

Although Sexton timely requested and received transcripts of the trial court proceedings, his review of the initial set of transcripts revealed that they were incomplete. Because the court reporter was unable to provide a complete set of transcripts for review prior to the deadline for filing an appeal, and Sexton, therefore, was unable to fully review the case file for potential appealable issues, he proceeded to file an appeal on behalf of the respondent on November 6, 2017, in order to preserve her appellate rights.

On November 15, 2017, Sexton received the full set of transcripts, completed his review of the case, and advised the respondent that he would be unable to represent her on appeal for lack of any nonfrivolous issue on which to proceed. Sexton then filed motions to withdraw his appearances with the Appellate Court and the trial court. See Practice Book § 3-10.[4] The Appellate

_____

[4] Practice Book § 3-10 sets forth the procedures and requirements that apply when an attorney wishes to withdraw an appearance.

In re Taijha H.-B.

Court denied the motion without prejudice, pending resolution of the matter in the trial court.

The trial court, *Burke, J.*, conducted a hearing on the motion to withdraw, during which Sexton represented that, upon a full review of the record, he was unable to identify any nonfrivolous ground for appeal. Sexton further represented that he had explained this conclusion to the respondent and to her guardian ad litem, and had advised them as to the respondent's options and her rights should she choose to proceed on a self-represented basis or to hire alternative counsel. The trial court, raising sua sponte the question of whether replacement counsel must be appointed if Sexton were permitted to withdraw, scheduled a second hearing and asked the parties to brief that question.

In his brief to the trial court, Sexton argued not only that due process might require the appointment of replacement counsel for the respondent, but also that Sexton himself should not be permitted to withdraw without first having complied with the *Anders* requirements. Following a second hearing, the trial court granted Sexton's motion to withdraw without requiring the filing of an *Anders* brief or conducting its own independent review to determine whether any appeal would be frivolous. Sexton then amended the respondent's appeal to include the issue of whether the court should have allowed him to withdraw without utilizing the *Anders* procedure.

Before the amended appeal had been briefed, the Appellate Court, sua sponte, ordered the parties to appear and give reason why that appeal should not be dismissed because (1) "the appeal was not properly filed pursuant to [Practice Book] § 79a-3 (c)," and (2) "the procedure set forth in *Anders* . . . is not applicable to the withdrawal of an appellate review attorney in child protection proceedings." Following argument on the motion, the Appellate Court dismissed the amended appeal for both of those reasons.

In re Taijha H.-B.

This certified appeal followed. Additional facts will be set forth as necessary.

II

We first consider whether the Appellate Court properly dismissed the respondent's amended appeal for failure to comply with Practice Book § 79a-3 (c). The respondent contends, and we agree, that the rule does not envision or account for the unique scenario involved in the present case. For that reason, her appeal should not have been dismissed on procedural grounds.[5]

In its order dismissing the respondent's amended appeal, the Appellate Court stated that "the appeal was not properly filed pursuant to [Practice Book] § 79a-3

[5] Although the meaning of Practice Book § 79a-3 (c) is central to the respondent's claim that her appeal was improperly dismissed, neither party directly addresses the issue of whether the Appellate Court properly construed that provision. Although the respondent argues that the rule makes no provision for a scenario such as the one involved in the present case, she nevertheless appears to assume, arguendo, that the Appellate Court properly construed Practice Book § 79a-3 (c). She argues that dismissing her appeal pursuant to that provision was improper because (1) it abridged her broader substantive right to counsel, as manifested in General Statutes §§ 45a-716 (b), 45a-717, 46b-135 (b), 46b-136 and 51-296a (b), and (2) it violated her equal protection rights insofar as it treats her differently from similarly situated, nonindigent parents, who are not barred from filing an appeal prior to an assessment of the merits thereof. See Practice Book § 63-4 (a) (1) (appellant must file preliminary statement of appellate issues within ten days of filing appeal); Practice Book § 79a-2 (establishing deadlines for filing appeal).

The commissioner, by contrast, contends that the Appellate Court correctly construed and applied Practice Book § 79a-3 (c). Her argument for that position is conclusory, however, and she makes no attempt either to address the respondent's arguments or to defend the Appellate Court's dismissal of the amended appeal on this ground.

In order to assess whether the Appellate Court properly dismissed the respondent's amended appeal pursuant to Practice Book § 79a-3 (c), we first are required to construe that rule. Because we conclude that the Appellate Court incorrectly construed Practice Book § 79a-3 (c) and that the rule did not require the dismissal of the respondent's amended appeal, we need not consider the respondent's arguments that construing the provision in that manner abridged her statutory and constitutional rights. In part III of this opinion, however, we do address a different equal protection argument that the respondent raised and that is likely to arise again on remand.

In re Taijha H.-B.

(c).''[6] That rule establishes the following procedure by which an indigent party, who wishes to appeal from a termination of parental rights but whose appointed trial counsel declines to pursue the appeal, may obtain review by the Division of Public Defender Services: ''If the appellate review attorney determines that there is merit to an appeal, that attorney shall file the appeal in accordance with [Practice Book §] 63-3.'' Practice Book § 79a-3 (c) (1). Furthermore, ''[i]f the reviewing attorney determines that there is no merit to an appeal, that attorney shall make this decision known to the judicial authority, to the party and to the Division of Public Defender Services at the earliest possible moment. The reviewing attorney shall inform the party, by letter, of the balance of the time remaining to appeal as a self-represented party or to secure counsel who may file an appearance to represent the party on appeal at the party's own expense.'' Practice Book § 79a-3 (c) (2).

On its face, the rule envisions and addresses only two possibilities. If the appellate review attorney completes a review of the case prior to the deadline for filing an appeal and determines that there is merit, then that attorney is directed to file an appearance in the Appellate Court; see Practice Book § 35a-21 (b); and to file the appeal on behalf of the indigent party. If a timely review fails to reveal any merit, then the participation of the appellate review attorney is limited to advising the party thereof. The party then has the option of filing an appeal on a self-represented basis or obtaining private counsel. Both prongs of the rule thus assume that the reviewing attorney is capable of completing a full review of the case prior to the filing deadline.

In the vast majority of cases, a diligent attorney will be able to complete this review within the appeal per-

_____

[6] Because the Appellate Court dismissed the amended appeal by way of summary order, without a written decision, and because the commissioner does not actively defend or present a rationale to support this aspect of the Appellate Court's order, our discussion of the basis for that court's order is necessarily somewhat speculative.

In re Taijha H.-B.

iod. In the present case, however, it is undisputed that, through no fault of his own, Sexton was unable to review the case fully prior to the filing deadline. Facing a dilemma in which he was unable to comply with either Practice Book § 79a-3 (c) (1) (by filing an appeal that he had determined to have potential merit) or § 79a-3 (c) (2) (by informing the respondent prior to the filing deadline that, in his estimation, there was no nonfrivolous ground for appeal), and lacking any guidance from the rules of practice, Sexton prudently opted to file the appeal, in order to preserve the respondent's rights, prior to making a final merits determination.

The commissioner contends that the better option would have been for Sexton to file a motion in the Appellate Court to suspend the rules; see Practice Book § 60-3; to allow an additional extension of time to obtain the missing portions of the trial record. We do not disagree that this option is available, and perhaps even preferable, as we have little doubt that such a motion would have been granted under the circumstances.[7]

The issue before us, however, is whether the rules categorically prohibit an appellate review attorney from filing a timely appeal, prior to completing a full merits review, even under the unique circumstances of this case.[8] In addressing this issue, we are mindful of the "long recognized presumption in favor of appellate jurisdiction"; *Seebeck* v. *State*, 246 Conn. 514, 533, 717 A.2d 1161 (1998); and also that the rules of practice are to be construed liberally, rather than narrowly and technically, in order to facilitate judicial business and to advance justice. See Practice Book §§ 1-8 and 60-1;

_____

[7] The amici Office of the Chief Public Defender, American Civil Liberties Union of Connecticut, and Center for Children's Advocacy represent that, in their experience, the Appellate Court never has rejected a motion to file a late appeal under such circumstances.

[8] Like our interpretation of statutes, our interpretation of the rules of practice presents an issue of law subject to plenary review. E.g., *State* v. *Jones*, 314 Conn. 410, 418, 102 A.3d 694 (2014).

In re Taijha H.-B.

see also 3A S. Singer, Sutherland Statutes and Statutory Construction (8th Ed. 2018) § 67:10, pp. 404–406 ("Courts usually favor a party's right of appeal and construe statutes and rules to protect that prerogative . . . . The essential policy animating this broad judicial approach is . . . that courts should consider cases on their merits and in terms of a party's substantive rights and not defeat them on mere technicalities.").

The primary argument in favor of the Appellate Court's reading of Practice Book § 79a-3 (c) would seem to be a prohibition by negative implication. It is well established that "[a] statute that prescribes that a thing should be done in a particular way, carries with it an implied prohibition against doing it in any other way . . . ." *New Haven* v. *Whitney*, 36 Conn. 373, 375 (1870). From the fact that the rule requires a reviewing attorney to file an appeal *after* having found potential merit, the Appellate Court apparently drew a negative implication that the attorney may not file the appeal prior to having made such a finding.

The principle of prohibition by negative implication, however, applies most directly in situations in which a statute or rule confers enumerated powers. See *State* v. *White*, 204 Conn. 410, 424, 528 A.2d 811 (1987). "But when the power to do a thing exists and may be exercised according to the usual methods of law or equity, and the statute is only by way of regulation or enlargement of the power, then there can be no implied prohibition of the power, or to the way it is to be enforced." *Johnston* v. *Allis*, 71 Conn. 207, 217, 41 A. 816 (1898); see also 3A S. Singer, supra, § 69:13, pp. 933–34 (with respect to termination of parental rights statutes, purely procedural language that is neither prohibitory nor jurisdictional is usually directory rather than mandatory).

The rules of practice permit an indigent parent, like any other party, to file an appeal without first having conducted a full review of the record and having made

In re Taijha H.-B.

a formal determination of merit. See Practice Book § 63-4 (a) (1). Section 79a-3 (c) does not purport to authorize the taking of an appeal by an indigent party but, rather, merely dictates the procedure by which an appointed appellate review attorney is to engage and assist in the process. Accordingly, we do not read that rule as mandating the dismissal of an indigent party's appeal when, as under the unusual circumstances of this case, full review for merit was not possible prior to the filing deadline.

## III

We next turn our attention to the respondent's claim that Practice Book § 79a-3, on its face, violates the equal protection clause of the federal constitution. Specifically, she argues that the rule imposes a different, higher legal burden on appeals brought by indigent litigants who have been assigned counsel than on litigants who have the financial means to hire private counsel. We are not persuaded.[9]

We begin by setting forth the governing law. "[T]he concept of equal protection [under both the state and

[9] Ordinarily, we do not decide constitutional issues when resolving those issues is not necessary to dispose of the case before us. See, e.g., *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 818, 12 A.3d 852 (2011); see also *Thalheim* v. *Greenwich*, 256 Conn. 628, 639, 775 A.2d 947 (2001) (same principles apply when construing rules of practice). We have made an exception to this rule, however, when an issue with constitutional implications that has been presented and briefed by the parties is likely to arise on remand. See, e.g., *State* v. *Santiago*, 305 Conn. 101, 293–94, 49 A.3d 566 (2012), superseded on other grounds, 318 Conn. 1, 122 A.3d 1 (2015).

In the present case, issues at the core of the respondent's second equal protection challenge; see footnote 5 of this opinion; are likely to arise again on remand. The respondent contends that Practice Book § 79a-3 is facially unconstitutional because, in every case in which an appellate review attorney is appointed to assist an indigent parent, that attorney is permitted to file an appeal only upon a determination that the appeal meets a higher standard (potential merit) than the standard that applies to nonindigent parents (non-frivolousness). On remand, the trial court, in evaluating Sexton's arguments and deciding whether to allow Sexton to withdraw, will need to know whether the respondent is correct that a different legal standard governs an indigent party's appeal from a termination of parental rights. We believe that the present context provides the most appropriate occasion to resolve this issue.

In re Taijha H.-B.

federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. . . . Conversely, the equal protection clause places no restrictions on the state's authority to treat dissimilar persons in a dissimilar manner. . . . Thus, [t]o implicate the equal protection [clause] . . . it is necessary that the state statute [or rule] . . . in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . [Accordingly], the analytical predicate [of an equal protection claim] is a determination of who are the persons [purporting to be] similarly situated. . . . [T]his initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. . . .

"This court has held, in accordance with the federal constitutional framework of analysis, that in areas of social and economic policy that neither proceed along suspect lines nor infringe fundamental constitutional rights, the [e]qual [p]rotection [c]lause is satisfied [as] long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental [decision maker] . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . . If, however, state action invidiously discriminates against a suspect class or affects a fundamental right, the action passes constitutional muster . . . only if it survives strict scrutiny. . . . Under that heightened standard, the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest."[10] (Citations omitted;

---

[10] Under both the state and federal constitutions, a third, intermediate level of scrutiny applies to certain quasi-suspect classifications and important liberty interests. See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 160–61, 957 A.2d 407 (2008).

In re Taijha H.-B.

internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, 289 Conn. 135, 157–59, 957 A.2d 407 (2008).

In the present case, the respondent's equal protection argument proceeds as follows. First, she argues that indigent parents such as herself and nonindigent parents with the means to hire private counsel are similarly situated with regard to appeals from parental rights termination orders.

Second, she argues that Practice Book § 79a-3 treats those similarly situated classes differently. She contends that, whereas § 79a-3 permits assigned counsel to take an appeal on behalf of an indigent client only if the attorney believes that the appeal is meritorious; see Practice Book § 79a-3 (c); a privately retained attorney may, consistent with the Rules of Professional Conduct, take an appeal from a termination order, as long as the appeal is not frivolous. See Rules of Professional Conduct 3.1. The respondent argues that, in essence, § 79a-3 (c) imposes a more restrictive bar than does rule 3.1, because there is a category of appellate claims that lack merit but that nevertheless are not frivolous. For example, there might be a case in which the only colorable basis for appeal is to invite an appellate tribunal to revisit a rule of law that had been upheld in the face of previous challenges. The respondent's argument appears to be that such an appeal would lack merit, because there would be little if any chance that the appellant would prevail, but it would not constitute a frivolous appeal for purposes of rule 3.1, because it would rest on a good faith argument for the reversal of existing law.

Third, the respondent argues that, because natural parents have a fundamental liberty interest in the care, custody, and management of their children; e.g., *Santosky* v. *Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); the alleged disparity created by

In re Taijha H.-B.

Practice Book § 79a-3 will pass constitutional muster only if it can survive strict scrutiny. She suggests that no compelling state interest justifies the alleged disparity created by the rule.

We assume without deciding that the first and third premises of the respondent's argument are true: indigent and nonindigent parents are similarly situated with respect to their right to appeal from termination orders and, because fundamental familial rights are implicated, any disparate treatment would be subject to strict scrutiny. Nevertheless, we conclude that the argument fails because the second premise is false. Section 79a-3 does not impose a different, higher standard for bringing an appeal than does rule 3.1.

Under rule 3.1 of the Rules of Professional Conduct, "[an] action is frivolous . . . if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." Rules of Professional Conduct 3.1, commentary. The notion of a meritorious appeal, by contrast, is nowhere defined in the Practice Book. Although common usage might support the respondent's argument that a meritorious appeal is one that enjoys a reasonable possibility of success,[11] so that an appeal brought in good faith but with a very slim chance of success could lack merit without being frivolous, the Practice Book generally treats the concepts of a meritless claim as meaning a frivolous claim.

Practice Book § 79a-3 operates in conjunction with Practice Book § 35a-21, which establishes not only the procedures by which appellate counsel may file an appearance in a child protection matter, but also the time to appeal from final judgments or decisions in such matters. Section 35a-21 (b) provides in relevant

[11] See, e.g., Black's Law Dictionary (10th Ed. 2014) p. 1139 (defining "meritorious" as, among other things, "worthy of legal victory").

In re Taijha H.-B.

part: "If an indigent party, child or youth wishes to appeal a final decision, the trial attorney shall file an appeal or seek review by an appellate review attorney in accordance with the rules for appeals in child protection matters in Chapter 79a. The reviewing attorney determining whether there is a *nonfrivolous* ground for appeal shall file a limited 'in addition to' appearance with the trial court for purposes of reviewing the merits of an appeal. If the reviewing attorney determines there is *merit* to an appeal, such attorney shall file a limited 'in addition to' appearance for the appeal with the Appellate Court. . . ." (Emphasis added.) It seems clear, then, that the concepts of a nonfrivolous appeal and a potentially meritorious appeal are deemed to be synonymous for purposes of § 79a-3.

This conclusion finds support in other provisions of the rules of practice; see Practice Book § 8-2 (d) (2) (B) (referring to "frivolous filings that have been without merit"); and also in the decisions of other courts that have considered under what circumstances an indigent parent is entitled to appellate review or representation in a termination matter.[12] Accordingly, we conclude that Practice Book § 79a-3 does not impose a higher standard on indigent parents seeking to appeal from a termination of their parental rights and, therefore, does not, on its face, violate their right to the equal protection of the law.

---

[12] See, e.g., *Linker-Flores* v. *Arkansas Dept. of Human Services*, 359 Ark. 131, 141, 194 S.W.3d 739 (2004) (when reviewing counsel can find no issue of arguable merit, court may deem appeal frivolous); *A.C.* v. *Cabinet for Health & Family Services*, 362 S.W.3d 361, 371 (Ky. App. 2012) ("[an] appeal [that] lacks any meritorious issues [that] might support the appeal . . . is . . . frivolous"); *State ex rel. D.A.G.*, 935 So. 2d 216, 219 (La. App.) ("should counsel find no valid, [good faith, i.e., nonfrivolous] grounds for appeal after conscientious examination of the record, counsel should so advise [the] court and request permission to withdraw"), review denied, 936 So. 2d 1278 (La. 2006); *In re D.E.S.*, 135 S.W.3d 326, 330 (Tex. App. 2004) (equating "wholly frivolous" and "without merit"). But see *L.C.* v. *State*, 963 P.2d 761, 765 (Utah App. 1998) (distinguishing meritless from frivolous appeals), cert. denied sub nom. *D.C.* v. *State*, 982 P.2d 88 (Utah 1999).

In re Taijha H.-B.

We recognize that, in *Anders*, the United States Supreme Court indicated that a statement by counsel that he found no merit in the defendant's appeal did not amount to a determination that an appeal would be wholly frivolous. See *Anders* v. *California*, supra, 386 U.S. 743–44. That conclusion in no way contradicts our determination that, for purposes of Connecticut's rules of appellate procedure, reviewing counsel is required to apply the same standards in determining whether there is no merit to an appeal as in determining whether the appeal would be frivolous. Indeed, the United States Supreme Court has subsequently indicated that the two concepts may be used synonymously in the *Anders* context. See *McCoy* v. *Court of Appeals of Wisconsin, District 1*, 486 U.S. 429, 438 n.10, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988) ("The terms 'wholly frivolous' and 'without merit' are often used interchangeably in the *Anders* . . . context. Whatever term is used to describe the conclusion an attorney must reach as to the appeal before requesting to withdraw and the court must reach before granting the request, what is required is a determination that the appeal lacks any basis in law or fact.").

Finally, we note that, in the present case, reviewing counsel did not merely conclude that the respondent's appeal lacked merit in that it was unlikely to succeed. Rather, he expressly represented to the court that, after reviewing the record, counsel "concluded that [they] did not have a nonfrivolous ground [on which] to proceed." Accordingly, there is no question that the respondent herself was not held to a higher standard than are nonindigent parents.

IV

Lastly, we turn our attention to the respondent's argument that the Appellate Court incorrectly determined that the procedure set forth in *Anders* is inapplicable to the withdrawal of an appellate review attorney in

child protection proceedings and, therefore, that the respondent's amended appeal should not have been dismissed on that basis. She argues that (1) the due process provisions of the state and federal constitutions secure a right to the effective assistance of counsel in appeals from termination decisions, and (2) a trial court may not permit appointed counsel to withdraw for lack of a nonfrivolous basis for appeal without adhering to the procedure set forth in *Anders*. In the alternative, the respondent contends that, at the very least, the state constitution requires some sort of more limited procedural safeguards than those set forth in *Anders*, and allowing reviewing counsel to withdraw on the basis of his mere representation that no potentially meritorious grounds for appeal have been identified is not sufficient to protect the rights of an indigent parent to due process of law. We conclude that, on the facts of the present case, the respondent had a constitutional right to the assistance of counsel on appeal and that the trial court did not observe adequate procedural safeguards before permitting Sexton to withdraw.

A

"*Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." *Pennsylvania* v. *Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). Accordingly, in assessing whether the trial court was required to follow some version of the *Anders* procedure before permitting reviewing counsel to withdraw, our first task is to determine whether, under either the federal or the state constitution, an indigent parent has a right to appointed counsel in an appeal from a termination of parental rights.[13]

_____

[13] The Appellate Court, answering this question in the negative in the present case, was bound by *In re Isaiah J.*, 140 Conn. App. 626, 59 A.3d 892, cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied sub nom. *Megan J.* v. *Katz*, 571 U.S. 924, 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013). In that case, a different panel of the Appellate Court, relying on the decision of

In answering this question, our starting point is *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). In *Lassiter*, the United States Supreme Court considered whether the due process clause of the fourteenth amendment requires the appointment of counsel for indigent parents in every parental status termination proceeding. See id., 24. The court read its prior cases as establishing a presumption that an indigent litigant has a right to appointed counsel only when his or her physical liberty is at stake. Id., 25–27. The court then applied the due process balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)—weighing the competing private and governmental interests at stake and the risk of an erroneous decision in the absence of appointed counsel—to determine whether an indigent parent's interest in obtaining the assistance of counsel is sufficiently compelling to overcome that presumption. *Lassiter* v. *Dept. of Social Services*, supra, 27–32.

Despite marshalling a number of potentially convincing arguments in favor of recognizing a right to counsel; see id.;[14] the court ultimately declined to hold that due

this court in *State* v. *Anonymous*, 179 Conn. 155, 425 A.2d 939 (1979), concluded that "[a] parent's right to effective assistance of counsel in a termination of parental rights proceeding is not rooted in the federal or state constitutions." *In re Isaiah J.*, supra, 640. In *Anonymous*, however, we concluded only that the *sixth* amendment right to the assistance of counsel "[i]n all criminal prosecutions"; U.S. Const., amend. VI; and the corresponding provision of the state constitution; see Conn. Const., art. I, § 8; do not extend to a parent in a civil termination of parental rights hearing. *State* v. *Anonymous*, supra, 159. We did not address in that case, which was decided prior to *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the issue presented in the present action, namely, whether the due process clause of the fourteenth amendment to the federal constitution, or the civil due process clause of the constitution of Connecticut; see Conn. Const., art. I, § 10; affords such a right. That question has yet to be resolved by this court.

[14] The court discussed, for example, the parent's "commanding" interest in "the accuracy and justice of the decision to terminate his or her parental status"; *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27; the fact that the state shares those interests, by virtue of its own "urgent interest" in the

In re Taijha H.-B.

process requires the appointment of counsel whenever
a state seeks to terminate the parental rights of an indi-
gent parent. Id., 31. Instead, the court held that whether
the federal constitution requires the appointment of
counsel is a fact specific determination that must be
made by balancing the *Mathews* factors on a case-by-
case basis. See id., 31–32. The court further cautioned
that, in light of the presumption against the right to
appointed counsel in the absence of a potential depriva-
tion of physical liberty, such a right would exist only
"[i]f, in a given case, the parent's interests [are] at their
strongest, the [s]tate's interests [are] at their weakest,
and the risks of error [are] at their peak . . . ." Id., 31.

In *Lassiter*, the court concluded that the trial court
did not deny the indigent mother due process of law
when it declined to appoint counsel. Id., 33. The court
reached this conclusion largely because (1) the mother
faced no potential criminal liability as a result of allega-
tions raised in the hearing, (2) no expert testimony
was presented, (3) the case did not involve especially
troublesome points of substantive or procedural law,
(4) the mother had declined to participate in prior pro-
ceedings and demonstrated little interest in contesting
the termination, and (5) the weight of the evidence
indicated that the mother, who only recently had begun
serving a prison sentence of twenty-five to forty years
for second degree murder, had little interest in strength-
ening her relationship with her son. Id., 20, 32–33.
Accordingly, although the court expressly declined to
set forth "a precise and detailed set of guidelines to be
followed in determining when the provi[sion] of counsel
is necessary to meet the applicable due process require-

welfare of the child; id.; the relative insignificance of the state's pecuniary
interests in the process; id., 28; the fact that parents involved in termination
hearings "are likely to be people with little education, who have had uncom-
mon difficulty in dealing with life, and who are, at the hearing, thrust into
a distressing and disorienting situation"; id., 30; and the fact that most state
courts have required the appointment of counsel for indigent parents at
termination proceedings. Id.

In re Taijha H.-B.

ments'' (internal quotation marks omitted); id., 32; we can glean from the court's analysis that the appointment of counsel may be required under the federal constitution when the indigent parent actively contests the termination, faces potential criminal liability as a result of evidence presented in the proceedings, must navigate complex substantive, procedural, or evidentiary issues, or might reasonably have prevailed with the assistance of counsel. Ultimately, the question is whether requiring the parent to proceed on a self-represented basis renders the proceedings fundamentally unfair. See id., 33.

Although *Lassiter* addressed the right to counsel at the hearing stage, subsequent decisions have strongly suggested that the same principles and considerations apply when an indigent parent appeals from a termination decision. Indeed, in *M.L.B.* v. *S.L.J. ex rel. S.L.J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996), the United States Supreme Court all but stated that, under appropriate circumstances, *Lassiter* also confers a right to counsel in termination appeals: ''It would be anomalous to recognize a right to a transcript needed to appeal a misdemeanor conviction . . . but hold, at the same time, that a transcript need not be prepared for [an indigent parent]—though were her defense sufficiently complex, [state paid] counsel, as *Lassiter* instructs, would be designated for her.'' Id., 123. It seems apparent, therefore, that *Lassiter* applies to appeals from parental rights termination decisions.

Having established that *Lassiter* applies to the present case, we now consider whether, on these facts, and in light of the guidance that the United States Supreme Court provided in that case, the respondent had a right to appellate counsel under the due process clause of the fourteenth amendment. We conclude that she did.

As we discussed, the United States Supreme Court found several factors to be dispositive in *Lassiter*: the absence of any potential criminal liability, the fact that

In re Taijha H.-B.

the mother was not confronted with expert testimony
or complicated issues that might have necessitated legal
expertise, her general lack of engagement in the pro-
cess, and compelling evidence favoring termination.[15]
In the present case, by contrast, most of those factors
point in the other direction.[16]

1

First, the United States Supreme Court has recog-
nized the importance of having access to counsel when
the behavior at issue in a termination proceeding also

---

[15] Other courts have construed the *Lassiter* factors somewhat more
broadly. The Tennessee Court of Appeals, for example, looks to the following
seven factors: "(1) whether expert medical and/or psychiatric testimony is
presented at the hearing; (2) whether the parents have had uncommon
difficulty in dealing with life and life situations; (3) whether the parents are
thrust into a distressing and disorienting situation at the hearing; (4) the
difficulty and complexity of the issues and procedures; (5) the possibility
of criminal self-incrimination; (6) the educational background of the parents;
and (7) the permanency of potential deprivation of the child in question."
*State ex rel. T.H.* v. *Min*, 802 S.W.2d 625, 627 (Tenn. App. 1990). We would
arrive at the same destination were we to follow that path.

[16] For purposes of brevity, rather than retracing the entire *Mathews* balanc-
ing analysis that the court conducted in *Lassiter*, as adapted to the facts
of the present case, we focus our discussion on the handful of factors and
considerations that the court in *Lassiter* identified as dispositive and on
whether those factors would tip the scale differently in the present case.
Accordingly, we do not discuss at length considerations such as, on the one
hand, a parent's fundamental interest in "the companionship, care, custody,
and management of his or her children"; (internal quotation marks omitted)
*Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27; or, on the other
hand, the state's interest in assessing and furthering the best interests of
the child in the most efficient and economical manner possible, both of
which interests will be evident in more or less every termination proceeding.
See id., 27–28. We emphasize, however, that *Mathews* remains the governing,
overarching test.

For this reason, we disagree with Justice Mullins when he alleges in his
concurring and dissenting opinion that "the majority [does] not consider
the interests of the child . . . ." On the contrary, our analysis, which incor-
porates *Lassiter*'s full *Mathews* analysis, takes the child's interests into
account, albeit implicitly. Specifically, as *Lassiter* and its progeny explain,
the child invariably will have an interest in an accurate determination as
to whether his or her parent should remain as a parent. *Anders* is designed
to ensure the accuracy of that determination. Moreover, in any particular
termination case, any possible delay attendant to the limited procedural
safeguards that due process requires; see part IV B 2 of this opinion; is
likely to be de minimis and will be far outweighed by the shared interest
of the parent and the child in an accurate determination.

In re Taijha H.-B.

may implicate potential criminal liability. As the court explained in *Lassiter,* "[s]ome parents will have an additional interest to protect. Petitions to terminate parental rights are not uncommonly based on alleged criminal activity. Parents so accused may need legal counsel to guide them in understanding the problems such petitions may create." *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27 n.3.

In the present case, this factor weighs in favor of recognizing a right to counsel. The respondent has a long history of criminal activity. She was arrested, convicted, and incarcerated on several occasions between 2014 and 2017. Importantly, at the time of the termination hearing, the respondent was facing new charges involving alleged marijuana possession and conspiracy to commit armed robbery. Testimony and other evidence presented at the hearing could have influenced those prosecutions or implicated the respondent in various other crimes. There was evidence, for example, that she had assaulted Taijha with a belt, abducted Taijha during a supervised visit, refused to participate in substance abuse testing and faked those tests that she did take, and repeatedly appeared to be abusing or under the influence of illicit substances, such as PCP. In fact, during the hearing, counsel for the commissioner questioned the respondent at some length about the new criminal charges. Ultimately, the trial court's finding that the respondent "failed to remain sober and drug free" was a key factor in its determination that she had failed to rehabilitate. Other courts applying *Lassiter* have found a right to appointed counsel for an indigent parent when there was far less potential for criminal liability than in the present case. See, e.g., *South Carolina Dept. of Social Services* v. *Vanderhorst*, 287 S.C. 554, 559–60, 340 S.E.2d 149 (1986) (allegations of alleged physical abuse of child); *State ex rel. T.H.* v. *Min*, 802 S.W.2d 625, 627 (Tenn. App. 1990) (parent made one statement to court exposing herself to potential criminal liability).

In re Taijha H.-B.

2

In *Lassiter*, the court also indicated that an indigent parent's need for representation is greater, and the potential for error, should she proceed on a self-represented basis, is higher, when a case involves complex legal questions, the presentation of expert testimony, or other factors that would render self-representation problematic or impossible. Unlike in *Lassiter*, in the present case, those factors also support the conclusion that the respondent has a right to the appointment of appellate counsel.[17]

The trial featured testimony by two expert witnesses —Ines Schroeder, a forensic psychologist, and James Pier, a clinical neuropsychologist—and a third expert, Bandy Lee, a forensic psychiatrist, testified at a prior competency hearing. The court relied heavily on the opinions of those experts in reaching the conclusions

---

[17] We recognize that *Lassiter* dealt with the issue of whether *trial* counsel should be appointed and that some of the factors that we have been discussing, such as potential criminal liability, are arguably less relevant at the appellate level. Nevertheless, our sister courts, often as a matter of state constitutional or statutory law, have recognized the importance of the assistance of counsel to effectively present an appeal from a termination of parental rights, given the complexities and intricacies of appellate practice. See, e.g., *Reist* v. *Bay County Circuit Judge*, 396 Mich. 326, 348–49, 241 N.W.2d 55 (1976), overruled in part on other grounds by *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *State ex rel. Heller* v. *Miller*, 61 Ohio St. 2d 6, 13–14, 399 N.E.2d 66 (1980), overruled in part on other grounds by *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); *In re Welfare of Luscier*, 84 Wn. 2d 135, 138, 524 P.2d 906 (1974), overruled in part on other grounds by *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981); see also *K.P.B.* v. *D.C.A.*, 685 So. 2d 750, 752 (Ala. Civ. App. 1996) (recognizing indigent parent's right to appointed counsel in termination appeals under Alabama constitution); *In re H.E.*, 312 Mont. 182, 186, 59 P.3d 29 (2002) (suggesting that indigent parent has constitutional right to appointed counsel in termination appeals but not specifying whether right is based on federal or state constitution). Even with respect to potential criminal liability, there is always the prospect that a party compelled to represent himself or herself on appeal will be required to address issues related to his or her alleged criminal conduct.

In re Taijha H.-B.

that the respondent was incapable of caring for Taijha and that she was unable or unwilling to benefit from reunification efforts.

More important, although we are not prepared to say that the trial involved especially complex questions of law, in the present case, that is largely irrelevant insofar as the respondent has been adjudicated incompetent and has serious, unresolved mental health issues that would make it difficult, if not impossible, for her to devise and execute a viable appellate strategy. The trial court credited expert testimony that the respondent suffers from a number of severe psychiatric impairments. She has been diagnosed with psychotic disorder. Her behavior is erratic and unfocused, her thought processes tangential and delusional, her speech rambling and incoherent, and her insight and judgment extraordinarily limited.[18]

In short, the task of representing oneself on appeal, which is formidable for the most competent of laypersons, would be virtually inconceivable for a litigant facing the respondent's challenges. Our sister courts, under similar circumstances, have had no difficulty concluding that to require such a litigant to proceed on a self-represented basis would be fundamentally unfair. See, e.g., *South Carolina Dept. of Social Services* v. *Vanderhorst*, supra, 287 S.C. 560 (recognizing right to appointed counsel under *Lassiter* when mother's behavior evidenced mental instability); *In re Welfare of Hall*, 99 Wn. 2d 842, 846–47, 664 P.2d 1245 (1983) (unlike in criminal context, in which defendant must be competent to stand trial, respondent in child deprivation proceeding "may be entirely incompetent and entirely unable to raise potentially meritorious issues" pro se); see also *State ex rel. T.H.* v. *Min*, supra, 802

---

[18] Counsel also represented to the trial court that the respondent, who is incarcerated, has limited access to legal materials, a law library, or a telephone.

In re Taijha H.-B.

S.W.2d 627 (although case did not present overly complex issues or procedures, parents were so lacking in education and intelligence that appointment of counsel was necessary).

3

The next factor that the United States Supreme Court found to be dispositive in *Lassiter* was that the mother in that case had declined to participate in prior proceedings and demonstrated little interest in contesting the termination. *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 33. In the present case, there is no doubt that the respondent's unresolved mental health and substance abuse problems and repeated incarcerations hindered her ability to take the steps necessary to demonstrate an ability to rehabilitate.

Unlike in *Lassiter*, however, there is abundant evidence in the present case that the respondent has attempted to prioritize her relationship with Taijha. After Taijha was removed from the respondent's care, the respondent filed a petition in 2011 to be reinstated as Taijha's guardian. In 2014, she attended thirty-three of forty scheduled visits to the R Kids therapeutic family time program. The following year, she referred herself for substance abuse treatment. The respondent also engaged private counsel to represent her at the trial, despite her documented financial need. She attended all of the hearings before the trial court and submitted additional documentary evidence after the close of the trial.

In addition, several of the commissioner's own witnesses testified about the respondent's affection for and commitment to her daughter. Schroeder testified that she was very loving, attentive, and affectionate with Taijha in their various sessions together. Alyssa Clarino, a department social worker, indicated that it was very apparent that the respondent loved Taijha and wished to care for Taijha to the best of her ability.

In re Taijha H.-B.

Anna Garcia, the director of the R Kids Family Center, concurred, testifying that Taijha is clearly the respondent's "biggest motivation in life." Indeed, at the time of trial, the respondent recently had requested that the frequency of her visitation with Taijha be increased. There is little doubt, then, that, despite her well documented inability to be a stable, reliable, and nurturing resource for Taijha, the respondent demonstrated far more of a commitment to reestablishing custody, maintaining a parental relationship, and actively asserting her legal rights than did the mother in *Lassiter*. See *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 33.

4

The last factor that the court found persuasive in *Lassiter* was that the weight of the evidence that the mother lacked interest in rekindling her relationship with her son was so great that the presence of counsel could not have made a determinative difference. Id., 32–33. In the present case, as we discussed, it is undisputed that the respondent was interested in maintaining a relationship with Taijha and that mother and daughter shared a close emotional bond. The primary concern was that the respondent's largely unacknowledged and untreated mental health conditions made it impossible for her to provide a stable, nurturing environment.

Our review of the *Lassiter* factors, then, leads us to conclude that the respondent has a right to appointed appellate counsel under the due process clause of the fourteenth amendment. Because we are persuaded that the federal constitution quite clearly secures the respondent's right to counsel,[19] we need not consider her argument that article first, § 10, of the Connecticut constitution independently confer such a right.[20]

[19] We emphasize that *Lassiter* and its progeny recognize a constitutional right to counsel in the civil context only in termination of parental rights actions and, indeed, only in a very limited subset of such cases. Our decision today should not be read to expand the scope of that right.

[20] It bears noting, however, that the respondent offers several facially plausible arguments as to why the state constitution confers broader rights

In re Taijha H.-B.

In so holding, we do not intend to gainsay the trial court's well documented factual findings on the merits. Nor do we express an opinion as to whether Sexton correctly concluded that there is no nonfrivolous ground for the respondent's appeal. We hold only that, for all of the reasons discussed in this opinion, we are unable to conclude, on the basis of the present record, that the assistance of counsel could be of no benefit to the respondent in an appeal from the termination of her parental rights.

B

Having concluded that the respondent was entitled to the appointment of counsel in her appeal from the termination of her parental rights, we now turn our attention to her contention that an *Anders* procedure, or something akin thereto, is required to vindicate that right when, as in the present case, appointed counsel finds no potential merit in the appeal and seeks to withdraw. We begin by briefly reviewing *Anders* and its progeny.

"In *Anders*, the United States Supreme Court outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indi-

in this respect. She notes, among other things, that (1) it already is well established that the due process clauses of our state constitution have, in certain contexts, a broader meaning and confer greater protections than do their federal counterparts; see, e.g., *State* v. *Morales*, 232 Conn. 707, 717, 657 A.2d 585 (1995); *Fasulo* v. *Arafeh*, 173 Conn. 473, 475, 378 A.2d 553 (1977); (2) the open courts provision contained in article first, § 10, which has been identified as grounding a right to state supported counsel for indigent paternity defendants; see *Lavertue* v. *Niman*, 196 Conn. 403, 412, 493 A.2d 213 (1985); see also W. Horton, The Connecticut State Constitution (2d Ed. 2012) p. 79; has no direct counterpart in the federal constitution; and (3) several of our sister courts have concluded that their state constitutions independently confer a right to counsel for indigent parents in termination proceedings. See, e.g., *K.P.B.* v. *D.C.A.*, 685 So. 2d 750, 752 (Ala. Civ. App. 1996) (Alabama Court of Civil Appeals recognized right under due process clause of Alabama constitution); *In re K.L.J.*, 813 P.2d 276, 278, 283–84 (Alaska 1991) (holding that Alaska constitution confers right and noting "the growing number of jurisdictions [that] have held that the right to counsel in termination proceedings exists under a state constitution"); *In re Welfare of Hall*, supra, 99 Wn. 2d 846 (implying that right derives from state constitution).

In re Taijha H.-B.

gent [criminal] defendant's case is wholly frivolous and wishes to withdraw from representation. . . . Under *Anders*, before appointed counsel may withdraw, he or she must provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional relevant points. . . . Thereafter, the court, having conducted its own independent review of the entire record of the case, may allow counsel to withdraw if it agrees with counsel's conclusion that the appeal is entirely without merit.'' (Citations omitted.) *State* v. *Francis*, 322 Conn. 247, 250 n.3, 140 A.3d 927 (2016).

From one vantage point, *Anders* attempted to resolve the conflicting professional duties facing appointed counsel, who is bound to advocate zealously for the interests of the indigent client but who is simultaneously prohibited from presenting frivolous arguments on appeal. From the standpoint of the client, *Anders* serves a range of purposes when appointed counsel can find no potentially meritorious grounds for appeal and seeks to withdraw. See *Penson* v. *Ohio*, 488 U.S. 75, 81–82, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988). The *Anders* procedure (1) ensures that counsel has, in fact, diligently reviewed the record for potential errors, (2) provides a possible appellate road map for the client should he or she choose to proceed on a self-represented basis, and (3) may lead counsel, through the process of researching and drafting, to conclude that the client's appeal is not without merit after all. In addition, submission of the brief facilitates and potentially expedites the independent judicial review that *Anders* requires. See *L.C.* v. *State*, 963 P.2d 761, 766 (Utah App. 1998), cert. denied sub nom. *D.C.* v. *State*, 982 P.2d 88 (Utah 1999).

In the more than one-half century since *Anders* was decided, the United States Supreme Court, our sister state courts, and the courts of Connecticut have sought

In re Taijha H.-B.

to answer a number of questions regarding the scope and applicability of the *Anders* procedure. These include, first, whether something short of the full procedure delineated in the final part of the *Anders* decision; see *Anders* v. *California*, supra, 386 U.S. 744; satisfies the requirements of the federal constitution and, second, whether *Anders* applies outside of the context of direct criminal appeals, such as in habeas proceedings, in connection with motions to set aside an illegal sentence, or in various civil contexts.

The United States Supreme Court answered the first question in *Smith* v. *Robbins*, 528 U.S. 259, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). In that case, the court held that the final part of *Anders*, in which the court set forth one acceptable procedure for handling frivolous appeals, is not obligatory, and that states are free to adopt different procedures for the withdrawal of appointed counsel, as long as those procedures adequately safeguard an indigent defendant's right to appellate counsel and protect against the possibility that appointed counsel has incorrectly determined that an appeal would be frivolous. Id., 265, 272–76. For example, in *Robbins*, the court approved of a procedure that the Supreme Court of California had adopted in *People* v. *Wende*, 25 Cal. 3d 436, 441–42, 600 P.2d 1071, 158 Cal. Rptr. 839 (1979).[21] *Smith* v. *Robbins*, supra, 276;

---

[21] Under *Wende*, appointed counsel, "upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case, with citations [to] the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief. He further requests that the court independently examine the record for arguable issues. Unlike under the *Anders* procedure, counsel following *Wende* neither explicitly states that his review has led him to conclude that an appeal would be frivolous . . . although that is considered implicit . . . nor requests leave to withdraw. Instead, he is silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing. . . .

"The appellate court, upon receiving a *Wende* brief, must conduct a review of the entire record, regardless of whether the defendant has filed a pro se brief." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Robbins*, supra, 528 U.S. 265.

In re Taijha H.-B.

see also *People ex rel. South Dakota Dept. of Social Services*, 678 N.W.2d 594, 597 (S.D. 2004) (under *Robbins*, state adopted briefing procedure pursuant to which counsel concedes lack of arguably meritorious issues for appeal but discusses only those issues requested by client, as alternative to *Anders*); J. Dugan & A. Moeller, "Make Way for the ABA: *Smith* v. *Robbins* Clears a Path for *Anders* Alternatives," 3 J. App. Prac. & Process 65, 91 (2001) ("states now have exceptionally wide latitude in regulating the performance of appellate counsel in frivolous cases").

The United States Supreme Court also has clarified that the federal constitution does not require that appointed counsel file an *Anders* brief before withdrawing from representation in postconviction criminal proceedings other than an appeal as of right. See, e.g., *Austin* v. *United States*, 513 U.S. 5, 8, 115 S. Ct. 380, 130 L. Ed. 2d 219 (1994) (discretionary appellate review of conviction); *Pennsylvania* v. *Finley*, supra, 481 U.S. 556–57 (habeas appeals). Although that court has not directly addressed the issue, this court has held that *Anders* also does not apply with respect to a postconviction motion to correct an illegal sentence; see *State* v. *Francis*, supra, 322 Conn. 265–66; and several of our sister courts have concluded that the *Anders* procedure is not required in the context of appeals from civil commitment. See J. Frueh, "The *Anders* Brief in Appeals from Civil Commitment," 118 Yale L.J. 272, 277 (2008). In some instances, however, *Anders* has been held to apply in other civil contexts. See, e.g., *In re D.A.S.*, 973 S.W.2d 296, 299 (Tex. 1998) (juvenile delinquency appeals).

1

With this background in mind, we turn now to the issue of whether, in termination cases such as this one, in which the indigent parent enjoys a constitutional right to counsel under *Lassiter*, some procedure similar

In re Taijha H.-B.

to that set forth in *Anders* is constitutionally required before appointed counsel, having found no nonfrivolous ground for appeal, will be permitted to withdraw from representation. Although our analysis is grounded in the due process clause of the fourteenth amendment, similar rationales would independently lead to the same conclusion under the due process provisions of the constitution of Connecticut. See footnote 20 of this opinion.

Three primary considerations lead us to conclude that due process does not permit the withdrawal of appointed counsel on the sole basis of counsel's conclusory statement that he or she was unable to identify any nonfrivolous grounds for appeal. First, of those courts that have analyzed the issue as a matter of federal or state constitutional law,[22] a majority have concluded that some *Anders*-type procedure is required. See, e.g., *In re Keller*, 138 Ill. App. 3d 746, 747–48, 486 N.E.2d 291 (1985) (*Anders* applies, and right may be constitutional or statutory); *State ex rel. D.A.G.*, 935 So. 2d 216, 218–19 (La. App.) (*Anders* applies under federal constitution, as well as rules of court), review denied, 936 So. 2d 1278 (La. 2006); *In re V.E.*, 417 Pa. Super. 68, 81, 83, 611 A.2d 1267 (1992) (*Anders* applies under federal constitution); *In re H.E.*, 312 Mont. 182, 186, 59 P.3d 29 (2002) (*Anders* applies, but constitutional basis was unspecified); *L.C.* v. *State*, supra, 963 P.2d 763–66 (*Anders* applies under both Utah and federal constitutions).[23] But see *Denise H.* v. *Arizona Dept. of Economic*

---

[22] A number of other courts have grounded a right to an *Anders*-type procedure in a state statutory right to counsel. See, e.g., *A.C.* v. *Cabinet for Health & Family Services*, 362 S.W.3d 361, 370 (Ky. App. 2012); *People ex rel. South Dakota Dept. of Social Services*, supra, 678 N.W.2d 598; *In re K.S.M.*, 61 S.W.3d 632, 633 (Tex. App. 2001).

[23] We note that some of the cited cases address the precise issue presented in this case, namely, whether an *Anders* procedure is required to satisfy an indigent litigant's due process rights, whereas others address whether appointed counsel is ethically obligated to continue to prosecute a frivolous appeal or is permitted to withdraw upon satisfying the *Anders* requirements. In other words, some cases ask whether *Anders* is *necessary* before counsel may withdraw, whereas others ask whether it is *sufficient*.

In re Taijha H.-B.

*Security*, 193 Ariz. 257, 259–60, 972 P.2d 241 (App. 1998) (indigent parent has due process and statutory right to appointed counsel, but counsel has no right to file *Anders* brief); *In re Sade C.*, 13 Cal. 4th 952, 985, 920 P.2d 716, 55 Cal. Rptr. 2d 771 (1996) *(Anders* brief is not constitutionally required), cert. denied sub nom. *Gregory C.* v. *Los Angeles County Dept. of Children's Services*, 519 U.S. 1081, 117 S. Ct. 747, 136 L. Ed. 2d 685 (1997); *N.S.H.* v. *Florida Dept. of Children & Family Services*, 843 So. 2d 898, 903 (Fla.) (same), cert. denied, 540 U.S. 950, 124 S. Ct. 388, 157 L. Ed. 2d 282 (2003).

The second reason why we conclude that a mere conclusory representation by appointed counsel that he or she was unable to identify any nonfrivolous ground for appeal is insufficient to protect an indigent parent's due process right to counsel is that most of the same rationales that require the use of the *Anders* procedure in the criminal context apply with equal force to termination actions. A number of our sister courts have found this reasoning to be compelling. See, e.g., *J.K.* v. *Lee County Dept. of Human Resources*, 668 So. 2d 813, 816 (Ala. Civ. App. 1995); *Linker-Flores* v. *Arkansas Dept. of Human Services*, 359 Ark. 131, 139, 194 S.W.3d 739 (2004); *People ex rel. South Dakota Dept. of Social Services*, supra, 678 N.W.2d 598; *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App. 2004).

Although it is rare for a diligent attorney to overlook potentially meritorious grounds for appeal, such oversights are not unheard of. See, e.g., *Penson* v. *Ohio*, supra, 488 U.S. 79 (in criminal case, reviewing court found " 'several arguable claims,' " one of which was deemed to be reversible error); *Tammy M.* v. *Dept. of Child Safety*, 242 Ariz. 457, 460–62 and n.4, 397 P.3d 1057 (App. 2017) (in termination of parental rights proceeding, indigent mother, proceeding pro se after withdrawal of appellate counsel, identified and ultimately prevailed on due process claim that counsel failed to identify). In a criminal matter, it is, first and foremost,

the defendant whose interest it is to ensure that an erroneous conviction is not sustained on appeal; yet, in a termination matter, it is not only the parent whose rights are at stake but also the child, who has a fundamental interest in the accuracy of the outcome and the preservation of family integrity. See, e.g., *In re Melody L.*, 290 Conn. 131, 157, 962 A.2d 81 (2009), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); see also *Santosky* v. *Kramer*, supra, 455 U.S. 766–67 ("[The state] shares the parent's interest in an accurate and just decision . . . . [T]he [s]tate registers no gain [toward] its declared goals when it separates children from the custody of fit parents." [Citations omitted; internal quotation marks omitted.]). Accordingly, the primary purpose for requiring *Anders* briefing and independent judicial review, namely, error correction, applies with as much force in the context of a termination proceeding.

The other primary functions of the *Anders* procedure —assisting the reviewing court in efficiently reviewing the record and the indigent parent in preparing for possible self-representation—are also especially critical in the termination context. Relative to a criminal trial, a termination proceeding can potentially lead to the deprivation of a liberty interest under a less stringent standard of proof, with fewer procedural and evidentiary safeguards, without the option of a jury trial, and on the basis of somewhat amorphous or imprecise concepts such as the best interest of the child. See *In re V.E.*, supra, 417 Pa. Super. 83; see also General Statutes § 45a-717 (g) (court must find, on basis of clear and convincing evidence, that termination is in best interest of child); Practice Book § 32a-2 (a) (termination hearings are civil in nature and informal). For these reasons, "zealous advocacy of the parent's cause is of particular importance in an involuntary termination proceeding." *In re V.E.*, supra, 83.

In re Taijha H.-B.

Third, particularly with respect to that subset of termination appeals for which the federal constitution requires the appointment of appellate counsel, we conclude that a balancing of the relevant interests weighs in favor of affording the indigent litigant at least some of the procedural protections set forth in *Anders*. As we discussed, cases in which a parent has a right to appointed counsel under the fourteenth amendment will typically be those in which he or she may face some potential criminal liability, those involving thorny legal or evidentiary issues, or those in which the parent has actively asserted his or her parental rights but is ill equipped to vindicate them as a self-represented party on appeal. When criminal liability may attach, the same considerations that require the use of the *Anders* procedure in the sixth amendment context are likely to apply with respect to a civil termination proceeding as well. When the case involves expert testimony or complex legal issues, then, especially in light of our conclusion in part IV B 2 of this opinion that a trial court may opt to apply safeguards that are more expeditious and less resource intensive than those discussed in *Anders*, the benefits of obtaining a second opinion in the form of some limited judicial review of counsel's no merit determination more than offset the potential costs.[24] Finally, in tragic situations such as in the present case, in which an indigent parent continually tries to assert her parental rights and to maintain a nourishing relationship with her child but lacks the mental or emo-

---

[24] Some courts and commentators have argued that, especially in the context of a termination proceeding, in which it is important that children are provided with some semblance of stability and closure in as timely a manner as justice permits; see *In re Davonta V.*, 285 Conn. 483, 489–92, 494–95, 940 A.2d 733 (2008); the use of a formal *Anders* procedure represents an unnecessary delay. See, e.g., *N.S.H.* v. *Florida Dept. of Children & Family Services*, supra, 843 So. 2d 902; see also C. Yee, Comment, "The *Anders* Brief and the Idaho Rule: It Is Time for Idaho to Reevaluate Criminal Appeals After Rejecting the *Anders* Procedure," 39 Idaho L. Rev. 143, 152–53 (2002). But see *A.C.* v. *Cabinet for Health & Family Services*, 362 S.W.3d 361, 369 (Ky. App. 2012) (*Anders* briefing entails "insignificant" delay of at most thirty days and typically will expedite reviewing court's work).

tional competence to do so successfully, fundamental fairness requires that she be afforded some minimal procedural protections before a court accepts counsel's representation that any appeal would be frivolous and, therefore, that she must prosecute her appeal on a self-represented basis.

2

For the foregoing reasons, we conclude that appellate review counsel may not be permitted to withdraw from representing an indigent parent who is constitutionally entitled to appointed counsel in a termination hearing solely on the basis of counsel's representation that he or she was unable to identify any nonfrivolous ground for appeal. As we discussed, however, the United States Supreme Court has indicated that the precise procedures discussed in *Anders* are not constitutionally mandated. Rather, states are free to adopt alternative procedures, as long as those procedures adequately safeguard an indigent litigant's right to counsel and protect against the possibility that appointed counsel has incorrectly determined that any appeal would be frivolous. *Smith* v. *Robbins*, supra, 528 U.S. 265, 272–76.

In the present case, the amici Office of the Chief Public Defender, American Civil Liberties Union of Connecticut, and Center for Children's Advocacy propose, and the respondent herself concedes, that something short of the full *Anders* procedure may be adequate to vindicate her right to counsel. In the context of a termination proceeding, we can conceive of circumstances in which a trial court reasonably might conclude that preparation of a formal *Anders* brief would represent a misuse of resources that would serve only to unnecessarily delay the resolution of the child's legal status. See footnote 24 of this opinion.

For instance, a court might determine, in its discretion, that holding a hearing would give the court sufficient opportunity to make an initial determination that

In re Taijha H.-B.

counsel had diligently reviewed the case for potential appellate issues and would provide an adequate forum for counsel to present the most promising—or least meritless—potential appellate issues for the court's and the parent's consideration. At that point, after the court and the parent have had an opportunity to question counsel about various possible avenues for appeal, the court could determine whether written briefing would be of value.

At a minimum, *Robbins* requires the following: (1) the court must conduct a colloquy sufficient to ascertain that counsel has evaluated all potential grounds for appeal and has brought the most promising ones to the attention of the court; a mere representation that, upon review, no grounds for appeal have been identified is insufficient; (2) the indigent parent must be afforded an opportunity to review counsel's conclusions and to bring to the court's attention what he or she believes are any appealable issues; and (3) the court must reach its own independent conclusion that any appeal would be frivolous. See J. Dugan & A. Moeller, supra, 3 J. App. Prac. & Process 91–92; see also *Smith* v. *Robbins*, supra, 528 U.S. 279–81. We believe that, subject to the discretion of the trial court, such a procedure would vindicate the due process rights of the indigent litigant without imposing undue financial burdens or delays.

3

In the present case, a review of the record does not satisfy us that even these minimal procedural protections were afforded to the respondent. Sexton's motion to withdraw was heard and decided by a different court than that which presided over the termination proceedings. Over the course of the two hearings conducted on the motion to withdraw, Sexton's evaluation of the merits of the case was limited to the following statement: "Upon our full review of the record, we have reached the conclusion and—and when I say the full

record, we did ultimately receive the full transcripts that were missing prior to the time that we needed to file the appeal, and we have subsequently concluded that we did not have a nonfrivolous ground [on which] to . . . proceed.''

In addition, although Sexton's brief to the trial court in connection with the motion to withdraw did include a short procedural history, that history was tailored and limited to the purpose of the brief, which was to advise the court as to whether the appointment of replacement counsel or the use of the *Anders* procedure was constitutionally required. At no point does the record indicate that the court was sufficiently apprised of the facts and legal issues involved in the case so as to enable it to perform its own independent review; nor does the record indicate that the court did in fact form its own independent judgment that Sexton had accurately determined that any appeal would be meritless.

Moreover, although Sexton indicated that he had communicated with the respondent by mail, over the telephone, and in person, and she represented that he had answered all of her questions to her satisfaction, there is no indication in the record whether those communications extended beyond satisfying the requirements of Practice Book § 3-10 and explaining what procedural options the respondent had should the court permit Sexton to withdraw. Specifically, there is no indication that the respondent was advised or educated as to potential legal issues that she might consider pursuing on appeal.[25] Accordingly, on remand, it will be necessary for the court, at the least, (1) to conduct a

---

[25] We emphasize that we do not in any way fault Sexton for these lacunae in the record. Sexton sought the opportunity to satisfy all of the *Anders* requirements, and it may well be that he either educated the respondent as to the relative merits of different potential appellate issues or reasonably concluded that, in light of the fact that she had been adjudicated incompetent, such education could serve no useful purpose. Our point is merely that, in light of the manner in which the motion to withdraw was disposed of, we are unable to confirm that the minimal requirements of due process were satisfied.

In re Taijha H.-B.

hearing to verify, on the record, that the respondent has been advised as to any potential grounds for appeal and has had the opportunity to question counsel thereon, and (2) to be satisfied that Sexton has fully explored potential grounds for appeal and shares his view that any appeal would be frivolous.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion McDONALD and ECKER, Js., concurred.

MULLINS, J., with whom KAHN, J., joins, concurring in part and dissenting in part. I agree with and join parts I, II and III of the majority opinion. My disagreement with the majority centers on the question of whether, in the present case, the prophylactic procedures set forth in *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, are required under the due process clause of the fourteenth amendment to the United States constitution. As the majority points out, for the *Anders* procedure to apply, first, there must be a constitutional right to counsel. We already have concluded that a parent has no right to counsel under the sixth amendment to the federal constitution or under article first, § 8, of the Connecticut constitution. See *State* v. *Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979). Nevertheless, the majority concludes that, pursuant to *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the present case falls into the small subset of termination proceedings where there is such a constitutional right pursuant to the due process clause of the fourteenth amendment. I respectfully disagree with part IV of the majority opinion.

Rather, I agree with the reasoning of the Supreme Court of California, which balanced the factors

expressed in *Lassiter* and concluded that the due process clause of the fourteenth amendment does not require an *Anders* procedure in this context. See *In re Sade C.*, 13 Cal. 4th 952, 990, 920 P.2d 716, 55 Cal. Rptr. 2d 771 (1996), cert. denied sub nom. *Gregory C.* v. *Dept. of Children's Services*, 519 U.S. 1081, 117 S. Ct. 747, 136 L. Ed. 2d 685 (1997). In *Lassiter*, the United States Supreme Court began its analysis with "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 26–27. The court further explained that "[t]he dispositive question . . . is whether the three . . . factors [set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)], when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus . . . lead to the conclusion that the [d]ue [p]rocess [c]lause requires the appointment of counsel when a [s]tate seeks to terminate an indigent's parental status." *Lassiter* v. *Dept. of Social Services*, supra, 31.

The three *Eldridge* factors that must be weighed against the presumption are "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." Id., 27. The United States Supreme Court explained in *Lassiter* that "[w]e must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." Id. The majority acknowledges the presumption and the balancing that is required to overcome it but, in my view, overcomes the presumption too readily.

In assessing the strength of the first *Eldridge* prong— the private interests at stake—the majority did not con-

In re Taijha H.-B.

sider the interests of the child, Taijha H.-B. As the
Supreme Court of California explained in *In re Sade
C.*, supra, 13 Cal. 4th 987, in a proceeding for termination
of parental rights, the first prong of the *Eldridge* factors
must necessarily include consideration of the rights of
the child. See id. ("[t]he private interests at stake are
those of the indigent parent and his child"). That court
aptly reasoned that, "[w]hat the parent wants or needs
is not necessarily what the child wants or needs. . . .
If [their wants and needs are] consistent, any added
protection arguably given to the parent might benefit
the child as well. If inconsistent, however, such protec-
tion might effectively cause the child harm by helping
the parent. The presumption, evidently, [when parental
rights have been terminated] is that the wants and needs
of parent and child are *inconsistent*. As stated, the
appealed-from decision [the termination of parental
rights], which is predicated on detriment the parent
caused or allowed his child to suffer, is presumptively
accurate and just." (Citation omitted; emphasis in origi-
nal.) Id., 989.

In the present case, there is no indication that the
child supports the appeal of the respondent, her mother,
Sonya B., and, therefore, we are left with the presump-
tion that the wants and needs of the parent and the
child are inconsistent.[1] Therefore, weighing the *Eld-*

_____

[1] I agree with the majority that an accurate determination as to whether
a child's parent should remain the parent is an interest shared by both the
child and the parent. But, those interests may diverge once a trial court
determines that termination of parental rights is in the child's best interest.
Here, the trial court has made a final determination that the respondent
should not remain the parent. "After the [s]tate has established parental
unfitness . . . the court may assume . . . that the interests of the child
and the natural parents . . . diverge." *Santosky* v. *Kramer*, 455 U.S. 745,
760, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1981). Thus, a valid determination
has been made that "presumptively establishes that the child's welfare lies
with someone *other than* [her] parent." (Emphasis in original.) *In re Sade
C.*, supra, 13 Cal. 4th 990.

Consequently, given that a presumptively valid determination that the
respondent's rights should be terminated has been made, the *Anders*-like
procedures the majority now requires unnecessarily prolong the resolution
of this matter. "There is little that can be as detrimental to a child's sound

In re Taijha H.-B.

*ridge* factors against the presumption against counsel, unless there is a deprivation of physical liberty, I would conclude that there is no constitutional due process right to state appointed counsel in this case. Consequently, if there is no constitutional right to counsel, the *Anders* procedure does not apply.

I acknowledge that, despite not having a constitutional due process right to counsel, parents still enjoy a statutory right to counsel in termination proceedings. See General Statutes § 45a-717 (b). That statutory right, however, does not mandate the use of the *Anders* procedure. See *State* v. *Francis*, 322 Conn. 247, 259, 262, 140 A.3d 927 (2016) (declining to require *Anders* procedure to safeguard purely statutory right to counsel for motion to correct illegal sentence in criminal cases and reasoning that, "because there is no underlying constitutional right to appointed counsel in postconviction proceedings, criminal defendants have no constitutional right to insist on the *Anders* [procedure] which [was] designed solely to protect that underlying constitutional right" [internal quotation marks omitted]). Thus, I conclude that our state statutes and rules of practice provide the proper procedure to follow when an appellate attorney wishes to withdraw from an appeal of a decision terminating parental rights.

Under our law, for cases involving the termination of parental rights, if counsel reviews a case and concludes that there are no nonfrivolous issues to pursue on appeal, counsel is required to make this known to

development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." *Lehman* v. *Lycoming County Children's Services Agency*, 458 U.S. 502, 513–14, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982). The extended uncertainty that the *Anders*-like procedures usher in after a presumptively valid determination has been made that termination of parental rights is appropriate, is not in the child's best interest. This view is fortified by the fact that, in this particular case, the child, who has a right to do so, has not joined in the respondent's appeal, nor has she raised any of her own issues with respect to the accuracy of the trial court's determination that the respondent's parental rights should be terminated.

the judicial authority, as well as to the party and the Division of Public Defender Services. See Practice Book § 79a-3 (c) (2). Nothing more is required. The fact that nothing more is required does not mean that a trial judge's hands are tied. If a trial court has concerns related to the reasons for counsel's withdrawal, it can always inquire further. To be sure, this court previously has stated that, "if the court is not completely satisfied with the reasons for counsel's conclusion, it may direct counsel to provide additional substantiation for his opinion or deny counsel's request to withdraw." *State* v. *Francis*, supra, 322 Conn. 268 n.12. The fact that the trial court is not mandated to merely accept counsel's representation, without question, supports my view that the statutory scheme is sufficient to protect an indigent parent's right to counsel.

Accordingly, I respectfully concur and dissent.